The United States Court of Appeals for the Ninth Circuit is now in session. Good morning, ladies and gentlemen. We apologize for the slight delay in convening court this morning. Judge Reinhart and I are very pleased to have a senior district judge and distinguished member of our profession, Lou Pollock, sitting with us today from the Eastern District of Pennsylvania. He will be with us today and tomorrow. We understand that counsel who have to give argument are here, and so we will call the cases in the order that they are listed. The first case, Moya Garcia v. Holder, is – I thought it was submitted on the briefs, but this doesn't say that, and I don't have the correct sheet. Okay. It's submitted on the briefs, and it is so ordered. The next case – the first case for argument is Sanchez-Coronado v. Holder. May I have 10 seconds to express my extraordinary appreciation of the opportunity to come and sit in this Court, and particularly with these colleagues? Thank you. It is reciprocated. All right. And with that, we will hear our first argument, and you may proceed. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Vikram K. Badranath, counsel for the Petitioner. It is Maria Sanchez. If I may, I'd like to reserve 1 minute 30 seconds for rebuttal. Your Honors, this case illustrates a classic example of the Board of Immigration Appeals rubber-stamping a decision of an immigration judge. A review of the Board of Immigration Appeals decision reveals that it is mere boilerplate and could easily be applied to 1,000 different cases before this Court and also pending before the Board of Immigration Appeals. If the Court looks at the decision, it can see that it has no individualized review or analysis of the Petitioner's claims. In this particular case, the Board of Immigration Appeals violated the Petitioner's substantive and procedural due process rights for three main reasons. One, by issuing a boilerplate decision without any individualized review or analysis. Two, by failing to provide the Petitioner a meaningful opportunity to be heard by failing to consider the most important piece of evidence, in this case, a psychological report. And three, by failing to correct the errors of the immigration judge in the Court below. This is not simply an attack of a discretionary determination or decision, Your Honors. This is, in fact, a due process violation. In this Court's prior precedents, in Ghali v. INS in 1995 and Castillo v. INS in 1991, the Court has required the Board of Immigration Appeals to conduct an individualized review and an individualized analysis for an alien's claims and issue a decision which states reasons for denial with particularity. In this particular case, the Board of Immigration Appeals simply issued a boilerplate decision without any type of individualized analysis in this case. They did not cite any fact in the record. They did not cite any testimony in the record or any document whatsoever. Now, this particular case is illustrative of the Board's error in this case by issuing a boilerplate decision is the fact that the one indication in the record they cited to was incorrect. The Board of Immigration Appeals stated in the decision in one particular area that they found the petitioner did not establish exceptional, extremely unusual hardship to the child. However, in this particular case, the petitioner has two United States citizen children. But isn't that the statutory language? And doesn't the statute speak in terms of hardship to the child and to a child? And didn't she concentrate her arguments on the little boy? The statute, Your Honor, in fact, does not speak simply to a child. It concludes a variety of different qualifying relatives. In fact, the statute speaks to a qualifying relative, which may include a spouse, a parent, or a child. Or a child. That's correct, Your Honor. However, in this particular case, the petitioner presented evidence regarding hardship to both of the children. There's testimony from the petitioner, testimony from her sister, documentation from a psychologist regarding both of the children. Is it not possible that there was a kind of typographical error here? Nothing praiseworthy, but how do we know? That's an excellent question, Your Honor. And the answer is we simply don't know. What we have before this Court is the record before this Court. Now, the government makes an argument, which is basically speculative, saying, well, this is just a scrivener's error.  This was an error. Well, if we don't know whether it is or not, shouldn't it be remanded to let the BIA tell us? And the Court can certainly do that. It would be our position that the Court has the BIA's decision before it. The BIA has reviewed the evidence, has reviewed the record, and in the record itself, there's ample evidence that there were two children. The single BIA member who affirmed this decision of the immigration judge purportedly reviewed the record. In fact, in his decision, he stated, we have reviewed the record. Well, if they've reviewed the record, they would certainly know that there are two United States citizen children. And these types of cases were harshly discussed. Well, we're dealing with all kinds of myths and legal fictions. But under the legal fiction that he reviewed the record and that he knew what he was doing, and that it may be a scrivener's error or it may be some kind of error by the child. And in any of those circumstances, isn't it our role to let the BIA straighten out what it did? Your Honor, it's our position that the BIA already had an opportunity. And unfortunately, we give them more than one opportunity. If this Court were to be remanded back to the BIA for this particular decision, it's our contention that the board of immigration appeals would simply say, well, we don't find hardship to either two children. That's probably right. And this But not too much we can do about it, is there? Well, Your Honor, this particular court has held that when the Board of Immigration Appeals claims that they have, quote, reviewed the record, they must cite to some particular fact or circumstance in the record itself, some testimony. I'm not clear. What are you are you asking that this panel make a determination that there is hardship? Your Honor, one of the later claims, I suppose, does address that particular issue. Now, the government makes an issue regarding jurisdiction in this particular case. All I'm trying to do is find out what relief you're asking from this Court at this time. Yes, Your Honor. I got the feeling that you were not happy about Judge Reinhardt's suggestion that this be remanded. Where else should we send it? Well, Your Honor, to clarify, we would request that the case be remanded. But we'd ask that the court find that there is a due process violation in this particular case. The BIA's decision, I don't think anyone can dispute, is simple boilerplate. It can be applied to any particular case. But then what happens? That's what Judge Pollack is asking you. What happens next? We send it to the BIA for what purpose? Your Honor, we'd ask that the court be remanded to the Board of Immigration Appeals to remand the case back to the immigration judge for consideration of the other evidence in this case, namely the psychological report. Again, the petitioner has a right to due process in these proceedings. This Court has found in Quadris v. INS, as well as in Sarvia-Quintanilla v. INS, that every alien and removal proceedings has a right to due process. Neither the immigration judge or the Board of Immigration Appeals consider, again, the most crucial piece of evidence in this case, which is the psychological report. So that's the nub of your denial of due process, is that they didn't review the record as evidenced by the mistakes and that they therefore never reviewed the evidence that you had a right to submit? That's correct, Your Honor. The petitioner has a right to present evidence in this case. This is a case about exceptional, extremely unusual hardship. She complied with the applicable regulations. She submitted evidence from a 30-year professional psychologist finding that the petitioner's children would suffer exceptional, extremely unusual hardship. The immigration judge never addressed it. He didn't cite to it in his decision. He never read any of the contents into the record. The Board of Immigration Appeals then rubber-stamped the case, and the government claims that this Court, therefore, does not have jurisdiction because it's a discretionary determination. Again, this Court does have jurisdiction, not simply because it's a discretionary decision, but because there is a statutory eligibility issue we're dealing with. In other words, in every immigration case, there are two important issues. One is discretion, meaning, in other words, an immigration judge can say, I'm denying your case because you have criminal convictions, I don't like your demeanor, I don't find you to be credible, or I'm having a bad day. The immigration judge has the authority to do that, and Congress has stated that that type of decision is not reviewable in this Court. There is no jurisdiction to review such a decision. However, we're not dealing with that type of determination. We're dealing with a statutory eligibility issue. Statutory eligibility has a fixed standard under the law. In other words, is a Petitioner someone who can demonstrate eligibility for cancellation removal? Do they have 10 years? Do they have a conviction which disqualifies them from cancellation removal? And finally, the most important question, is this a situation where exceptional, extreme, unusual hardship has been met? That is a statutory standard, not an issue of discretion. Sotomayor, you have a couple minutes left. Perhaps we should hear from the government. Very well, Your Honor. Thank you. Thank you. May it please the Court. My name is Colette Winston, and I represent Attorney General Eric Holder, the Respondent in this case. The question here is whether Ms. Sanchez has a colorable due process claim. The answer to that question is no. Absent such a showing, the Court has no jurisdiction to review the issue of whether she met her burden to show exceptional and extremely unusual hardship to a qualifying  This has not been the case. Doesn't this Court have authority to find out whether the proper question was resolved by the BIA? I'm sorry, I didn't hear your question. Does this – are you suggesting that this Court has no authority to determine whether there was legal error in the form of inquiry conducted by the BIA? Well, there was no legal error here, but what I am saying is the Court does not have jurisdiction to review any judgment regarding the granting of relief. Unless there is a colorable claim of the legal error. Exactly, Your Honor. So let's start with whether there's a colorable claim of a legal error when you only consider a child instead of both children. I would like to address that, because I think that's one of the cornerstones of Petitioner's argument. When I thought about this, I really feel that what the Court was doing, what the Board was doing, was addressing Petitioner's concession. Petitioner has two U.S.-born children, Laura and Xavier. They conceded – Petitioner conceded that there's no extreme and unusual – extremely unusual hardship for Laura. So there's really only one child left, and that's the youngest son. And I can – I will point to the concession that Petitioner made in the record to the Board in his appeal brief, and it's on page 28, Administrative Record, page 28. And on that page, he states, "...although the hardships to Laura are not," and he underlines "...not above the ordinary," quote, unquote, "...situation, the hardships experienced by the Respondent's youngest son are..." He makes the very same concession in the reply brief to this Court, and the very same language is used on page 24 of his reply brief. So the Board was entirely correct in focusing on exceptional and extremely unusual hardship to one child, the youngest child. So there was no error here. Even if there was – there were an error, the Board obviously tracked the language of the statute, and the language of the statute clearly on 240A states removal would result to extremely – exceptional and extremely unusual hardship to the    And the language of the statute clearly on 240A states removal would result to extremely unusual hardship to this alien spouse, parent, or child. And lastly, it's possibly just harmless error, typographical error. But did you argue this concession in your brief? No. That was not raised in the brief that our office presented. However, it's in the reply brief, it's in the record, and it's also in the psychological report, which the Petitioner relies on heavily as the cornerstone of his argument. At the very end, the psychologist that created the report, and I'm referring to page 119 of the record, states, With the information available at this point, I do not see, and this is referring to Laura, that these stresses and damage would be unusual or any different than the suffering of other children who would be forced to return with their parents to Mexico following a parental deportation. So even the psychological report concedes that Laura's hardship is ordinary. The psychologist – But that's not a concession on her part. That's just evidence supporting the – could be evidence supporting the decision that there was – that one of the two children did not – would not experience hardship. Correct. That's just evidence in the record. So there is some reason for the Board in its decision to have used the word child and not children. But Ms. Sanchez tries to make four arguments that she claims are imbued with due process issues. And the four are four allegations. Before you move to that, let me be sure I understand what you're saying, that there's some reason that the BIA could have used the word child to refer to two children or – is that your suggestion, that we are to accept that as a – as a necessary reading of the BIA opinion? No, Your Honor. I wouldn't – I would not say that one should look at the word child to refer to children. But I think the reason why the Board used child here is because the – the qualifying relative issue is the son, is one child, is the youngest of the two children. And that's Javier and not Laura. And because that was what was argued to the Board in the appeal brief submitted by the Petitioner to the Board. So it stands to reason that the Board is focusing on the one child. So there was somewhat of a concession that they weren't making the argument as to the oldest of the two U.S.-born children. But turning to Petitioner's argument that the psychological report was not mentioned, the psychological report was mentioned by the immigration judge when he was reviewing the different exhibits that were to be included here. And on – on page 2 of the immigration judge's decision, the immigration judge states that Exhibit 4 is a report from a psychologist relating to the hardship that he believes the U.S. children of the Respondent would face if the Respondent's application was denied, simply because the Board did not refer to an exhibit, does not make the Board's decision boilerplate, it does not make – it does not allow an argument that she was deprived of her constitutional rights when she was not, and it does not support an individualized review-type argument. The Board could have even streamlined its decision. That would have been absolutely boilerplate, and yet that is not something that the Board is allowed to do that. There is a case that says that the administrative – that just stating that the administrative record is reviewed is enough, and that's Loretta Martinez. So in this case, the Board did not simply ignore the constitutional rights of the Petitioner. The Board stated, we have reviewed the record, and we agree that the Respondent does not qualify. The Board also stated the Respondent has presented no arguments on appeal which persuade us that this decision should be disturbed. Well, can the Board adopt the opinion of the IJ when there have been additional  that the IJ didn't consider? How can it do that? Well, there was nothing the IJ didn't consider. The psychological report was attached as an exhibit to the appeal brief here. So – and in the appeal brief itself, there's practically no case that doesn't mention it. That's a brief to? To the Board. Yeah. So the Board would have had to – the judge would have had to have his eyes closed when reading the appeal brief. No, I was asking you about the – about a summary affirmance. The Board could have summarily affirmed. Well, how could it if it – if it – how could it adopt the – because the summary affirmance is we adopt the opinion, and in that case, we review the opinion of the IJ. Correct. And how could they simply adopt it if they haven't looked at the documents that were in addition to the documents that the IJ had? I don't think there were any documents that were in addition to the documents the IJ had. The psychological report was – the IJ had that report, and he attached it to his appeal brief, but it was ready in the record. Okay. So it's – it wasn't anything in addition. It was part and parcel of the administrative record. So, you know, here – our whole point here is there's no due process claim. This is an ordinary challenge to hardship. But what the Petitioner is trying to attempt to ask the Court to do is to reweigh the facts. And did you say this Court is without authority to – to go behind the BIA's recital, we have reviewed the record? Yes, because – We're bound by that? I do believe the Court's bound by that because it's a subjective determination. And to not be bound by it would be to overturn an entire series of cases. If you had a BIA opinion in which you and I could agree that things were said that were simply incompatible with – with the record that was before the BIA, would it still be not something within the purview of an appellate court to – to address? I think if there's a clear error and an error in the application, you know, of the facts, then I would think that the Court would have jurisdiction because that would really go to the constitutional issue of, you know, has the Petitioner been deprived of due process. But here there's no error. There's nothing like this. And a recent case of Mendez-Castro is really on point. There was no error. There was nothing in dispute. And this Court has said even if there were facts that were in dispute, that's not something that the Court has jurisdiction over by virtue of what the Congress has – has laid out in its law. I think we understand your position. Are there further questions? I see that my time is up. But in conclusion, I would ask the Court to dismiss or deny the petition for review. Thank you. The reason the BIA used the word child instead of children is because the BIA never considered hardship to both children in this case. Again, the record indicates that the Petitioner has two children. She testified to it. There were birth certificates included. It's clear she had two children. The government's position is that you only claimed exceptional hardship as to one child, and that's why they used the term child. Well, Your Honor, the statutory language includes a variety of different relatives. The government's contention is that you agreed that there was hardship only to one child. Yes, Your Honor. And that is, with all due respect, is incorrect. The Petitioner never conceded hardship only to one child. Again, both on page 28 of our brief and page 24 of the reply brief, the Petitioner makes clear that the psychologist was referring to hardship to only one particular child. The Petitioner never said that there was only hardship to one child. This is something that was argued before the immigration judge and the Board of Immigration Appeals that there was hardship to both of the children. So with all due respect to counsel, that contention is erroneous. With respect to the psychological report, that is, again, referenced as an exhibit before the immigration judge and the Board of Immigration Appeals. Now, the government says this is an attempt to simply reweigh the facts. Well, in this particular case, the facts were never properly weighed. The immigration judge did not consider the psychological report. He didn't reference it in his decision. The government says, well, the immigration judge says, well, this is an exhibit. It is true the immigration judge did say this is marked as an exhibit. However, in his deliberations, he never addressed it. He never mentioned it. He never discussed it. He never put any of the psychological findings into the record. This violates due process because a petitioner has a due process right to be heard with respect to the primary issue in this case, which is exceptional and extremely unusual hardship. I also want to address the jurisdictional issue. Again, in this court's holdings in Ramadan, as well in Huseyev v. INS, the court has expanded jurisdiction under the Real ID Act to consider questions of law and constitutional claims. The petitioner is making a constitutional argument that the Board of Immigration Appeals violated her due process rights by failing to consider this evidence. Now, this court has found in Huseyev v. INS that under Ramadan, this court has the ability to review questions of law. The issue of exceptional, extremely unusual hardship is a question of law. It's not a discretionary determination. It has a specific legal standard. It's not subject to the value judgment of the individual, but is decided by BIA case law. So with that, we'd ask that the court reverse the decision. Thank you, others. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Ramos-Flores v. Holder.
judges: Schroeder, Reinhardt, Pollak